IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM WALLACE HILL        :

                           :

   v.                    :  Civil Action No. DKC 2001-3893
                             Criminal Case No. DKC 98-0067

                           :

UNITED STATES OF AMERICA

                           :

**MEMORANDUM ORDER**

Presently pending and ready for resolution is Petitioner's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255.[1]  For the reasons that follow, the motion will be denied.

On May 13, 1998, a seventeen count superseding indictment was filed against Petitioner, William W. Hill, and five co-defendants for conspiracy to distribute and possession with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846 and 18 U.S.C. §§ 922(g)(1) and 1956.  In addition to the conspiracy, Petitioner was charged with an additional count of cocaine distribution.  A jury found Petitioner guilty on November

---

[1] Petitioner's "Supplemental Addendum" filed long after the initial petition, asserting issues under *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), will not be addressed.  Not only do these issues not relate back to the timely filed petition, *Mayle v. Felix*, 545 U.S. 644, 650 (2005); *United States v. Pittman*, 209 F.3d 314, 316-17 (4th Cir. 2000), those decisions do not apply retroactively to cases such as Petitioner's.  The Fourth Circuit held that *Blakely* and *Booker* are not available for retroactive application to § 2255 post-conviction relief movants in *Morris v. United States*, 429 F.3d 65 (4th Cir. 2005).

30, 1998.  He was sentenced to 151 months imprisonment, followed by 5 years of supervised release.

**I. Issues**

Petitioner filed a § 2255 motion to vacate (paper 179), raising three issues under the general subject of ineffective assistance of counsel: (1) actual conflict of interest for concurrent representation of Mr. McCants; (2) failure to file motions to suppress; and (3) failure to appear at Petitioner's sentencing hearing.

**II. Standard of Review**

Title 28 U.S.C. § 2255 requires a petitioner asserting constitutional error to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law[.]"  On the other hand, "[t]he scope of review of non-constitutional error is more limited than that of constitutional error; a nonconstitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" *United States v. Mikalajunas*, 186 F.3d 490, 495-96 (4th Cir. 1999) (internal citation omitted).  While a pro se movant is entitled to have his arguments reviewed with

appropriate consideration, *see Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978), if the § 2255 motion, along with the files and records of the case, conclusively shows that he is entitled to no relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. 28 U.S.C. § 2255. Furthermore, only issues that have not been waived may be raised:

> In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. And, in order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence. [ ] *Mikalajunas*, 186 F.3d at 492-93 (citations omitted). To establish cause for procedural default based upon ineffective assistance of counsel, petitioners "must show that their attorneys' performance fell below an objective standard of reasonableness and that they suffered prejudice as a result." *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

*Leano v. United States*, 334 F.Supp.2d 885, 890 (D.S.C. 2004).

## III. Analysis

The standards governing constitutionally ineffective assistance of counsel claims are well settled under *Strickland*. To

prevail on a claim of ineffective assistance of counsel, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland,* 466 U.S. at 687.  To demonstrate actual prejudice, he must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  According to *Strickland*, there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and the courts must be highly deferential in scrutinizing counsel's performance. *See id.* at 688-89; *Bunch v. Thompson*, 949 F.2d 1354 (4th Cir. 1991), *cert. denied*, 505 U.S. 1230 (1992).  Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted even had the attorney been deficient. *See Strickland*, 466 U.S. at 697.

### A.   Conflict of Interest

To succeed in establishing ineffective assistance of counsel based on an actual conflict of interest, a petitioner must prove that counsel took action on behalf of one client and that the action adversely affected the defense of the other. *See United States v. Tatum*, 943 F.2d 370, 376 (4th Cir. 1991).  An attorney's performance has been adversely affected when the attorney actively pursued conflicting interests. *See Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).  Because joint representation does not amount to

4

a per se constitutional violation, merely demonstrating a potential conflict of interest will not suffice. *See Gilbert v. Moore*, 134 F.3d 642, 652 (4th Cir.) (en banc), *cert. denied*, 525 U.S. 840 (1998). The inquiries into whether an actual conflict of interest existed and whether it adversely affected the representation "are fact-based inquiries that often will be intertwined[.]" *United States v. Swartz*, 975 F.2d 1042, 1048 (4th Cir. 1992). There is a three part standard for showing an adverse effect:

> First, the petitioner must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued. Second, the petitioner must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision. In the language of *Tatum*, the petitioner must show that the alternative strategy or tactic was "clearly suggested by the circumstances." *Tatum*, 943 F.2d at 376. Finally, the petitioner must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

*Mickens v. Taylor*, 240 F.3d 348, 361 (4th Cir. 2001).

Gregory Lattimer represented Petitioner throughout trial. Mr. Lattimer was concurrently representing Shawn McCants, an acquaintance of Petitioner, in two unrelated charges in state court. On at least one occasion, Petitioner had engaged in illegal activity with Mr. McCants, against whom Petitioner would later cooperate with the government. The state charges against Mr. McCants were dismissed. In mid-July, a federal grand jury returned

5

an indictment against Mr. McCants relating to the same thefts that had been dismissed in the state court.  Mr. McCants was appointed a public defender.  In mid-December, after a verdict had already been returned against Petitioner, the court was notified that Mr. Lattimer had been retained to represent Mr. McCants in his federal criminal trial.  Petitioner sought new counsel and Paul F. Kemp began representation of Petitioner on December 31, 1998.  Mr. Kemp continued to represent Petitioner throughout the sentencing phase of his trial.  Mr. Lattimer was, however, never discharged by Petitioner and never moved to have his appearance stricken.

Petitioner asserts that Mr. Lattimer's conflict of interest is apparent from his (1) failure to call Mr. McCants to the stand to testify on Petitioner's behalf, and (2) failure to enter into plea negotiations with the Government.  During the sentencing hearing, the court accepted for the sake of argument that Mr. Lattimer's concurrent representation of Mr. McCants constituted a conflict of interest at that time.  (Trial Tr., 15, Nov. 1, 1999) ("THE COURT: 'Okay.  You're getting back to the actual conflict.  That part I'm willing to accept for purposes of discussion'").  Despite repeated inquiries, Petitioner was unable to show that he suffered any prejudice as a result of Mr. Lattimer's representation of Mr. McCants.  In this motion, Petitioner has not offered any additional evidence to support his claim.

Petitioner asserted at the sentencing hearing, and does so again in this motion, that Mr. Lattimer failed to call Mr. McCants, a crucial witness, because of a conflict of interest arising out of his dual representation. Petitioner has not produced any evidence that Mr. Lattimer's decision not to call Mr. McCants to testify arose out of his concern for Mr. McCants rather than his professional responsibilities to Petitioner. Direct testimony had identified Mr. McCants as a participant in a three kilogram drug transaction. Mr. Lattimer reasonably could have decided not to call Mr. McCants to avoid the risk of either perjury or the presentation of additional evidence against Petitioner.

Petitioner also contends that counsel failed to enter into plea negotiations on his behalf due to concern that his cooperation with the Government would negatively affect counsel's other client, Mr. McCants. This claim is unsupported by the evidence. First, Petitioner was not contacted prior to his trial regarding possible cooperation against Mr. McCants, who was not at that time facing federal charges. Therefore, this potential conflict did not arise until after Petitioner was convicted, at which point he began cooperating with the Government and indeed testified against Mr. McCants. Secondly, in preliminary discussions regarding a possible plea, Petitioner informed the Government that he would not accept a sentence that involved significant incarceration. The Government informed Petitioner that even if he elected to plead

guilty early in the proceedings and fully cooperated with the government, he would still face a term of imprisonment of at least 84 months. (Paper 185 at 8, paper 188 at 2).[2]  Because Petitioner clearly stated he was unwilling to accept a plea offer that involved a substantial period of incarceration, and the minimum the Government would offer was 84 months, counsel's failure to enter into plea negotiations was reasonable.  Petitioner cannot show that the outcome would have been different had he been represented by different counsel.  *See, e.g., Wilson v. Moore*, 178 F.3d 266, 280–81 (4th Cir. 1999) (holding that joint representation of husband and wife was not actual conflict of interest because wife's reason for rejecting plea offer was unrealistic belief that she could avoid prison sentence, not counsel's failure to pursue agreement).

**B.   Failure to File Motions to Suppress**

To successfully establish an ineffective assistance of counsel claim based upon a failure to file a motion to suppress evidence, Petitioner must show actual prejudice by demonstrating that his "Fourth Amendment claim is meritorious and that there is a

---

[2] Petitioner contends as part of his conflict of interest claim that Mr. Lattimer did not explain the sentencing guidelines to him and that he did not know that the charges carried a possible mandatory minimum, leaving him with "no context within which to evaluate" the 84 month offer.  Paper 188 at 2, Paper 179 at 4.  The record shows, however, that he was advised of the potential mandatory minimum and possible maximum sentences.   The tape of Petitioner's detention hearing reveals that the government asserted that he was facing a 10 year mandatory minimum sentence.   The magistrate judge stated that Petitioner was facing a life sentence.

reasonable probability that the verdict would have been different absent the excludable evidence . . . ." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Petitioner faults counsel for not moving to suppress evidence of telephone calls and pages sent between Petitioner and two of his co-defendants obtained by the government's use of a dialed number recorder, also known as a pen register.[3]  (Paper 179 at ¶ b).  It is well established that people do not enjoy an expectation of privacy in the phone numbers they dial and, therefore, "[t]he installation and use of a pen register, [is] not a 'search,' and no warrant [is] required."  *Smith v. Maryland*, 442 U.S. at 745-46. Thus, Petitioner cannot show actual prejudice resulting from counsel's failure to file a motion to suppress because Petitioner has no meritorious Fourth Amendment claim.

---

[3]     A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released.  It does not overhear oral communications and does not indicate whether calls are actually completed." *United States v. New York Tel. Co.*, 434 U.S. 159, 161 n. 1, 98 S.Ct. 364, 366 n. 1, 54 L.Ed.2d 376 (1977).  A pen register is "usually installed at a central telephone facility [and] records on a paper tape all numbers dialed from [the] line" to which it is attached.  *United States v. Giordano*, 416 U.S. 505, 549 n. 1, 94 S.Ct. 1820, 1842 n. 1, 40 L.Ed.2d 341 (1974) (opinion concurring in part and dissenting in part).

*Smith v. Maryland*, 442 U.S. 735, 736 n.1 (1979).

Secondly, Petitioner charges that counsel impermissibly failed to challenge the introduction into evidence of items seized from his home pursuant to a "document warrant," specifically cellular phones, pagers, and guns. (Paper 179, ¶¶ c-f). Petitioner claims that the warrant was unlawfully obtained because it was not supported by probable cause, or in the alternative, that even if it was lawfully obtained, the police exceeded its scope.

An affidavit used in seeking a search warrant must provide the magistrate judge with a substantial basis for determining the existence of probable cause. *Illinois v. Gates*, 462 U.S. 213, 239 (1983). The warrant to search Petitioner's home was lawfully obtained as it was supported by probable cause. The affidavit relied upon information from two confidential informants who had reliably cooperated with police in the past. They both identified Petitioner as being a known cocaine distributor. (Paper 185, Ex. G at 9-10). Such information is sufficient to meet the Fourth Amendment's requirements. *See United States v. Bynum*, 293 F.3d 192, 197 (4th Cir. 2002) ("[T]he officer relied not on an unknown informant but one whom he knew and who had provided reliable information in the past that the law enforcement officers had 'verified.'"); *United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998) (finding affidavit sufficient when it stated that "the [confidential informant] has proven his/her reliability in the past by making controlled purchase[s] of crack cocaine under the direct

supervision of affiant officers"). A third confidential informant testified that Petitioner regularly supplied "it" with cocaine powder, which the informant later sold. (Paper 185, Ex. G at 50). Furthermore, numerous electronic communications were intercepted linking Petitioner to Heath Lewis, a co-defendant and suspected cocaine distributor. (Paper 185, Ex. G at 52). The information supplied by the confidential informants was substantiated through independent means whenever possible. Under the totality of the circumstances, this information was sufficient to establish probable cause.

Nor did the police officers exceed the scope of the search warrant. As to the cellular phones and pagers, the warrant specifically allows for the seizure of "[a]ny cellular, digital or mobile telephones and any digital display pagers or other paging device . . . ." (Paper 185, Ex. F, Att. B ¶ 10). Although the search warrant does not expressly authorize the seizure of guns, it does authorize the seizure of "[p]araphernalia for . . . distributing cocaine . . . ." (Paper 185, Ex. F, Att. B ¶ 9). This circuit has recognized that "[g]uns are tools of the drug trade and are commonly recognized articles of narcotics paraphernalia." *United States v. Ward*, 171 F.3d 188, 195 (4th Cir. 1999). *See also United States v. Ricks*, 882 F.2d 885 (4th Cir. 1989); *United States v. Soto*, 959 F.2d 1181, 1187 (2nd Cir. 1992).

Therefore, the guns seized from Petitioner's home were within the scope of the warrant.

Again, Petitioner cannot demonstrate actual prejudice by counsel's failure to file a motion to suppress evidence because all the evidence was lawfully obtained, thus there was no Fourth Amendment violation.

### C.   Failure to Appear at Sentencing Hearing

The Government concedes that Mr. Lattimer's failure to appear at Petitioner's sentencing hearing, even though new counsel had been retained, was objectively unreasonable, thus satisfying the first *Strickland* prong.     (The court questions whether Mr. Lattimer, whom Petitioner claims then faced an actual conflict of interest, would have been permitted to continue to represent him.) In any event, Petitioner must now prove that he suffered actual prejudice.  To demonstrate actual prejudice, he must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Petitioner claims he was adversely affected by Mr. Lattimer's absence during the hearing, because no objection was raised to the Government's calculation of drug quantity and thus Petitioner received too high a sentence.  According to Petitioner, there was an understanding between the two attorneys and Petitioner that "Mr. Lattimer was to be responsible for addressing the issue of drug

quantity" during the sentencing hearing.  (Paper 189 at ¶¶ c- d).
Petitioner asserts that the Government's calculation of the
relevant drug quantity was "seriously flawed."  (*Id*. at ¶ f).
Petitioner argues that had Mr. Lattimer attended the hearing, he
would have objected to the quantity stated by the Government.

Despite the "understanding" between the attorneys, there is no
reason that Mr. Kemp, Petitioner's other counsel, could not have
objected to the quantity assessed by the Government, because it was
clear that Mr. Lattimer would be unable to do so, due to his
absence.  The court specifically inquired into whether the offense
level was appropriate: "THE COURT: '. . . Is there any dispute with
regard to offense level, based upon the base offense level, which
the presentence report states is 34.'  MR. KEMP:  'No, Your Honor.
In terms of drug weight, no.'"  (Sentencing Tr., 3, Nov. 1, 1999).
Later, when Mr. Lattimer's absence was directly noted, Mr. Kemp
further observed: "When I was initially retained in this case . .
. I had wanted him to be present because he was counsel of record
and if there were any controversy concerning the offense level
relating to drug weight or something of that sort, he obviously,
can speak to that and I cannot." Sentencing Tr. 5, Nov. 1, 1999).
No further mention of quantity was made despite the fact that a
further sentencing hearing was held two months later on January 6,
2000.  Petitioner was offered an opportunity to contest the
quantity of drugs assessed against him and he specifically did not

13

do so.  Thus, Petitioner fails to proffer evidence that establishes that he suffered prejudice by Mr. Lattimer's failure to appear at sentencing.

**IV.  Conclusion**

For the foregoing reasons, Petitioner has failed to establish under the *Strickland* standard that he suffered ineffective assistance of counsel.  Accordingly, his § 2255 motion to vacate will be denied.

```
            /s/
DEBORAH K. CHASANOW
United States District Judge
```